WO                      IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


JOAN K. SMITH, an individual; and          )
ROBERTA E. TATE, an individual,            )
                                           )
                    Plaintiffs,            )
                                           )
            vs.                            )
                                           )
CITY OF PHOENIX, a municipal corporation,  )
                                           )          No. 2:14-cv-0936-HRH
                    Defendant.             )
_____)


<u>O R D E R</u>

<u>Motion for Partial Summary Judgment</u>

Plaintiffs move for summary judgment on the issue of whether they are non-exempt employees for purposes of the Fair Labor Standards Act.[1]  This motion is opposed.[2]  Oral argument has not been requested and is not deemed necessary.

<u>Facts</u>

Plaintiffs are Joan Karen Smith and Roberta Tate.  Defendant is the City of Phoenix.

---

[1]Docket No. 55.

[2]Docket No. 58.

Plaintiffs worked as resident assistants (RAs) at Pine Tower, a senior housing facility owned and operated by defendant. Smith worked as a RA from May 2007 through April 2014. Tate worked as a RA from September 2009 through February 2014.

Plaintiffs signed a Tenant Resident Assistant (TRA) Agreement each year that they were RAs. The TRA Agreement provided that an RA "shall be an independent contractor and shall not be an employee of the City."[3] The TRA Agreement further provided that the RA "agrees that he or she is not an employee of the City[.]"[4] Diane Reifenstahl, a property manager for defendant, testified that the RAs were independent contractors.[5] Pene Norville, defendant's housing manager and Rule 30(b)(6) witness, testified that the RAs were "kind of right in the middle of" being a volunteer and an independent contractor, that they were a "[c]ombination of both."[6]

Attached to the TRA Agreement was a list of services that RAs were to provide:

▸ Follow any directions provided by the Housing, Law, Fire and Police Departments.

---

[3]TRA Agreement at 3, ¶ 6, Exhibit A, Defendant's Controverting Statement of Facts [etc.], Docket No. 59.

[4]Id.

[5]Deposition of Diane Reifenstahl at 19:22-24, Exhibit E, Defendant's Controverting Statement of Facts [etc.], Docket No. 59.

[6]Deposition of Pene Norville at 34:10-17, Exhibit A, Reply in Support of Plaintiffs' Motion for Partial Summary Judgment, Docket No. 60.

- ► Respond promptly to all emergency calls.

- ► Complete incident reports on all unusual or emergency incidents.

- ► Tactfully inform residents of lease violations and report them to the administrative staff.

- ► Coordinate activities with administrative staff and the other tenant resident assistants.

- ► Cooperate with all City services and departments, and follow subsequent memoranda from them.

- ► Secure apartments in case of death or lengthy illness.

- ► Conduct security checks on all doors leading to the outside periodically and on an as needed basis.

- ► Conduct security checks of entire area, inside and outside, periodically and on an as-needed basis. Checks must be more frequent on Saturdays, Sundays and holidays.

- ► Lock all doors leading to the outside by the assigned time and permit only individuals with legitimate reason to enter the premises.

- ► Notify emergency maintenance personnel and Housing Program Assistant of any condition which needs prompt attention, such as air conditioner failure, major electrical outage, leaking or broken piping, etc.

- ► Report all non-emergency maintenance problems to administrative staff.

> ▸ Perform light housekeeping duties in public areas, as needed or as directed and maintain the Tenant Resident Assistant's apartment.
>
> ▸ Tenant Resident Assistant must live in the project and be responsible for and respond to tenants' legitimate requirements.
>
> ▸ Answer City phone in a courteous and timely manner.
>
> ▸ Other duties as may be reasonably required.
>
> ▸ No personal use of telephone provided by the Housing Department is permitted.[7]

The Scope of Services exhibit that was attached to the TRA Agreement also provided that

> [t]he Tenant Resident Assistant shall perform the services required under this Agreement from 8:00 a.m. through 5:00 p.m. Monday through Friday, every other week. Services after 5:00 p.m. on weekdays and all day on Saturdays, Sundays and holidays are limited to emergencies, locking and un-locking doors, and security checks.[8]

Smith testified that her workweek "started ... on a Monday at 8:00 o'clock, and I ended my week the following Monday at 8.00."[9]   However, there is a work schedule

---

[7]Scope of Services for Tenant Resident Assistant Services at 1-2, Exhibit A, Amended and Restated Tenant Resident Assistant Agreement, Exhibit B, Plaintiffs' Motion for Partial Summary Judgment, Docket No. 55.

[8]Id. at 2.

[9]Deposition of Joan Karen Smith at 86:24-87:1, Exhibit A, Plaintiffs' Motion for Partial
(continued...)

calendar in evidence that shows that plaintiffs created their own work schedule and that they did not work seven days in a row.[10]

Smith testified that on the days that she worked, she was required to be available 24 hours per day.[11]  Tate testified that she did not leave the premises when she was on duty.[12] Reifenstahl testified that RAs "had to remain on the property" when they were on duty.[13] Norville testified that defendant "prefers" that the RAs remain on site while on duty.[14]

Smith testified that other duties she performed as a RA included delivering monthly rent statements, delivering other notices to tenants, signing contractors in and out of the facility, and monitoring for unauthorized persons.[15]  RAs would also respond if the front

---

[9](...continued)
Summary Judgment, Docket No. 55.

[10]Exhibit G, Defendant's Controverting Statement of Facts [etc.], Docket No. 59.

[11]Smith Deposition at 47:24-48:2, Exhibit A, Plaintiffs' Motion for Partial Summary Judgment, Docket No. 55.

[12]Deposition of Roberta Elise Tate at 30:17-19, Exhibit H, Plaintiffs' Motion for Partial Summary Judgment, Docket No. 55.

[13]Reifenstahl Deposition at 14:24-25, Exhibit E, Defendant's Controverting Statement of Facts [etc.], Docket No. 59.

[14]Norville Deposition at 25:18-20, Exhibit D, Defendant's Controverting Statement of Facts [etc.], Docket No. 59.

[15]Smith Deposition at 89:16-19; 106:11-14; 141:22-142:6, Exhibit A, Plaintiffs' Motion for Partial Summary Judgment, Docket No. 55.

gate would not open at night.[16]  A RA could get up to two to three calls per hour from tenants in need of assistance.[17]  But, an RA might get fewer calls as well.  For example, Smith's sister testified that Smith would only get one to two calls or knocks on her door during a four-to-five hour period.[18]

After hours, RAs were to respond to emergencies such as fire, flood and medical emergencies.  Residents could call the RA in case of an emergency and the RA would then call 911. However, Reifenstahl testified that RAs were not required to answer calls that came in after hours,[19] and residents could call 911 themselves or call a maintenance emergency number themselves.

RAs received a rent-free apartment and a monthly stipend of $200.00.  Smith's rent would have been $456.00 per month had she not been an RA and Tate's would have been $250.00.

In the general information sheet that was provided to Pine Tower residents, defendant advised residents that

_____

[16]Deposition of Earnestine T. Pittman at 25:12-19, Exhibit C, Plaintiffs' Motion for Partial Summary Judgment, Docket No. 55.

[17]Id. at 23:3-19.

[18]Deposition of Peggy Yost at 21:18-22:9, Exhibit L, Defendant's Controverting Statement of Facts [etc.], Docket No. 59.

[19]Reifenstahl Deposition at 14:6-10, Exhibit E, Defendant's Controverting Statement of Facts [etc.], Docket No. 59.

> [f]or your protection, there is a Resident Assistant on duty 24
> hours per day, 7 days per week.  The Resident Assistants will act
> on behalf of the office if the manager is not available, and will
> assist with fire,  life, safety and maintenance emergencies and all
> other management issues.  As the Resident Assistant is on duty
> for such extended hours, we ask that non-emergency items (i.e.,
> packages, rent statements) wait until regular business hours.
> Please do not disturb the Resident Assistant who is off duty.[20]

In addition to the RAs, Pine Tower had a property manager who was on the premises during the weekdays.  There were also two full-time maintenance workers and a full-time service coordinator on the premises during the weekdays.

On May 1, 2014, plaintiffs commenced this action in which they assert two claims under the Fair Labor Standards Act (FLSA):  1) a minimum wage violation and 2) an overtime violation.  Plaintiffs now move for summary judgment that they were non-exempt employees for purposes of the FLSA and not independent contractors or volunteers.

<u>Discussion</u>

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The initial burden is on the moving party to show that there is an absence of genuine issues of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there

---

[20]Pine Tower General Information Sheet, Exhibit F, Plaintiffs' Motion for Partial Summary Judgment, Docket No. 55.

is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  In

deciding a motion for summary judgment, the court views the evidence of the non-movant

in the light most favorable to that party, and all justifiable inferences are also to be drawn

in its favor.  Id. at 255.  "[T]he court's ultimate inquiry is to determine whether the 'specific

facts' set forth by the nonmoving party, coupled with undisputed background or contextual

facts, are such that a rational or reasonable jury might return a verdict in its favor based on

that evidence."  T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631

(9th Cir. 1987).

      "The FLSA provides that '[e]very employer shall pay to each of his employees who

in any workweek is engaged in commerce or in the production of goods for commerce, or

is employed in an enterprise engaged in commerce or in the production of goods for

commerce,' a minimum wage."  Boucher v. Shaw, 572 F.3d 1087, 1090 (9th Cir. 2009) (quoting

29 U.S.C. § 206(a)).  In addition, "no employer shall employ any of its covered employees for

a work week that is longer than 40 hours unless that employee receives as compensation for

his employment at least one and a half times the regular rate for all overtime hours."

Forrester v. Roth's I. G. A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981).  But, defendant

contends that the FLSA does not apply to plaintiffs because they were not "employees."

      First, defendant argues that plaintiffs were independent contractors rather than

employees.  Although plaintiffs' contracts state that they were independent contractors,

"[e]conomic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA." <u>Real v. Driscoll Strawberry Associates, Inc.</u>, 603 F.2d 748, 755 (9th Cir. 1979). To determine whether a person is an employee rather than an independent contractor for purposes of the FLSA, "courts have identified a number of factors that should be considered." <u>Donovan v. Sureway Cleaners</u>, 656 F.2d 1368, 1370 (9th Cir. 1981). "Although the list is not exhaustive," the six factors the court should consider are:

> "1) the degree of the alleged employer's right to control the manner in which the work is to be performed,
>
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
>
> 4) whether the service rendered requires a special skill;
>
> 5) the degree of permanence of the working relationship; and
>
> 6) whether the service rendered is an integral part of the alleged employer's business."

<u>Id.</u> (quoting <u>Real</u>, 603 F.2d at 754). "The presence of any individual factor is not dispositive of whether an employee/employer relationship exists. Such a determination depends 'upon the circumstances of the whole activity.'" <u>Real</u>, 603 F.2d at 754 (quoting <u>Rutherford Food Corp. v. McComb</u>, 331 U.S. 722, 730 (1947)). "The existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts—whether workers

are employees or independent contractors—is a question of law."  Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2nd Cir. 1988).

Based on the totality of the circumstances here, as a matter of law, plaintiffs were not independent contractors.  Although defendant did not exert total control over the manner in which plaintiffs' work was to be done, defendant provided a list of duties that plaintiffs were to perform and the Pine Tower manager at times assigned additional tasks to them such as helping to prepare and deliver the monthly rent statements.[21]

Plaintiffs were not provided an opportunity for profit or loss based on work performance.  The fact that Smith was able to have other jobs while working as an RA does not suggest that she had the opportunity for profit.[22]  Employees may work for more than one employer without losing the protections afforded by the FLSA.  Walling v. Twyeffort, Inc., 158 F.2d 944, 947 (2nd Cir. 1947).

As Norville testified, plaintiffs were not required to purchase any specific tools or equipment in order to do their jobs.[23]  Rather, plaintiffs were provided a specific apartment

---

[21]Smith Deposition at 104:3-105:4, Exhibit A, Plaintiffs' Motion for Partial Summary Judgment, Docket No. 55.

[22]Smith worked at the nursing home where her mother lived for a period of time and also worked two days a month as an aesthetician at two different senior housing facilities.

[23]Norville Deposition at 28:2-5, Exhibit A, Reply in Support of Plaintiffs' Motion for Partial Summary Judgment, Docket No. 60.

by defendant that had a city phone and fire alarm system in it.[24]  In addition, Smith testified that the phone log books that the RAs used for a time were provided to them by defendant.[25] The fact that Smith used her own cell phone to perform her tasks[26] was nothing more than a matter of convenience.

Plaintiffs also did not employ assistants.  Although defendant has offered evidence that plaintiffs had people help them with their tasks, there is no evidence that plaintiffs "employed" these helpers.  Rather, the "helpers" were friends and relatives of Smith who would help out when visiting Smith.

Being an RA did not require any special skills.  Rather, as Norville testified, RAs were "typically very low-functioning individuals."[27]

There was a high degree of permanence in the working relationship, even though plaintiffs signed a new contract each year.  Smith was an RA for almost 7 years and Tate was an RA for over three years.  Norville's testimony is not to the contrary.  Although Norville

---

[24]Norville Deposition at 18:22-19:4, Exhibit D, Plaintiffs' Motion for Partial Summary Judgment, Docket No. 55.

[25]Smith Deposition at 58:8-14, Exhibit A, Plaintiffs' Motion for Partial Summary Judgment, Docket No. 55.

[26]Smith Deposition at 129:2-25, Exhibit B, Defendant's Controverting Statement of Facts [etc.], Docket No. 59.

[27]Norville Deposition at 16:14-18, Exhibit D, Plaintiffs' Motion for Partial Summary Judgment, Docket No. 55.

testified that currently there is only one RA who has been in that position for more than one year,[28] Norville also testified that "we have had them [RAs] go from two months to 10 years or maybe even longer."[29]

The services that the RAs provide may not be integral to defendant's operation of senior housing facilities as evidenced by the fact that not all of defendant's senior housing facilities have RAs.[30]  But, as Norville testified, having RAs provides "a benefit to the residents, yes."[31]

The fact that either party could terminate the RA contract also suggests an employee relationship.[32]  See Mathis v. Housing Authority of Umatilla County, 242 F. Supp. 2d 777, 785 (D. Or. 2002) ("The Section 8 Coordinator position was for an indefinite duration and either party could terminate the relationship at any time.  These facts favor an employee relationship.").  And the fact that plaintiffs have no identifiable business entity holding itself out as a provider of special services suggests that plaintiffs were not independent contractors

_____

[28]Norville Deposition at 31:5-10, Exhibit D, Defendant's Controverting Statement of Facts [etc.], Docket No. 59.

[29]Id. at 31:2-3.

[30]Id. at 44:15-20.

[31]Norville Deposition at 14:6-11, Exhibit D, Plaintiffs' Motion for Partial Summary Judgment, Docket No. 55.

[32]Id. at 15:20-21 ("We have contracts with them and either party can give a 30-day notice to terminate the contract").

as does the fact that plaintiffs have no separate place of business, but rather were required to reside on defendant's premises.

Secondly, defendant argues that plaintiffs were volunteers rather than employees. For purposes of the FLSA, a volunteer is "[a]n individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered[.]" 29 C.F.R. § 553.101. "Volunteers may be paid expenses, reasonable benefits, a nominal fee, or any combination thereof, for their service without losing their status as volunteers." Id. § 553.106(a). "A nominal fee is not a substitute for compensation and must not be tied to productivity." Id. at § 553.106(e). "Congress did not intend to discourage or impede volunteer activities undertaken for civic, charitable, or humanitarian purposes" but "[i]ndividuals shall be considered volunteers only where their services are offered freely and without pressure or coercion, direct or implied, from an employer." Id. at § 553.101(b) & (c). "Whether someone is an employee or a volunteer for purposes of the FLSA is a question of law to be determined by the court." Vonbrethorst v. Washington County, Idaho, Case No. CV06–0351–SEJL, 2008 WL 2785549, at *3 (D. Idaho July 15, 2008).

As a matter of law, plaintiffs were not volunteers. On an annual basis, Smith received $5,472 in free rent and Tate received $3,000 in free rent. When this is added to the $2,400 in stipends that they received, Smith received annual compensation of $7,872 and Tate received

-13-

$5,400, which is more than a nominal amount.  These amounts represent compensation, not reasonable benefits or nominal fees.  It is also significant that plaintiffs signed contracts with defendant each year.  A volunteer is not typically required to sign what in this case was basically an employment contract.[33]  And, even if plaintiffs were motivated to become RAs, at least in part, by civic, charitable, or humanitarian reasons, the fact that they were being compensated for their work means that they were not volunteers.

<u>Conclusion</u>

Plaintiffs' motion for partial summary judgment[34] is granted.  Plaintiffs are granted summary judgment that they are neither independent contractors nor volunteers for purposes of the FLSA.

DATED at Anchorage, Alaska, this 5th day of November, 2015.

/s/ H. Russel Holland
United States District Judge

---

[33]Plaintiffs also offered an "employment opportunity" flyer in support of their argument that they were not volunteers.  Exhibit G, Plaintiffs' Motion for Partial Summary Judgment, Docket No. 55.  But, as defendant points out, this flyer was from Scott Business Group, not defendant.

[34]Docket No. 55.